## JOHN GOOD v. STATE.

No. A-3788.   Opinion Filed June 17, 1922.
(207 Pac. 565.)

(Syllabus.)

1. **Larceny—Knowingly Assisting Thief in Disposal of Stolen Property.** One who joins with a thief and assists in the asportation and disposal of stolen property, knowing at the time he does so that the other acting with him is in the act of carrying away the property of another, is equally guilty of the larceny.

2. **Appeal and Error—Harmless Error—Minor Errors in Instructions.** A judgment of conviction will not be reversed, because of minor errors in the court's instructions, where upon the defendant's own testimony a conviction should have resulted.

Appeal from District Court, Canadian County; James I. Phelps, Judge.

John Good was convicted of grand larceny, and he appeals. Affirmed.

A. G. Morrison, for plaintiff in error.

George F. Short, Atty. Gen., and C. W. King, Asst. Atty. Gen., for the State.

MATSON, J. This is an appeal from the district court of Canadian county, wherein John Good was convicted of the crime of grand larceny and sentenced to serve a term of 18 months' imprisonment in the state penitentiary. A short statement of the facts follows:

Waverly Barrett, a farmer living about 10 miles east of the city of El Reno, Canadian county, Okla., was the owner of a Studebaker automobile. He kept this car stored, when not in use, in a garage on the farm, and the car was equipped with five 32x4 automobile casings. Four of these casings were on the wheels, these were Goodrich casings. The fifth, a new Ajax casing, was fastened to the rear end of the car on a holder. In the latter part of May, 1919, all these casings were stolen from the car during the nighttime. Barrett last saw the casings on the car about 6 o'clock in the evening and when he went out to milk very early the next morning he noticed the casings were gone. It had been raining, and the ground was damp and muddy. Barrett discovered the shoeprints of two men leading up to and away from the garage, and tracked these men over to the public highway, where a car equipped with tires the size used on Fords was seen to have stood. Barrett and some of his neighbors followed the tracks of this car into the city of El Reno, where the tracks could not longer be followed because of the paved streets. The loss was reported to the police of El Reno, and a search was made in that city the next morning for a car having a peculiar tread tire of the kind that made the track which these parties had traced. This defendant was at that time operating a taxicab service in the city of El Reno. The car operated by him had a casing exactly like the one the parties had followed.

Some time later two of the casings stolen from Barrett were found on an automobile of a man by the name of Jobe in the city of El Reno, and upon investigation it was learned that Jobe had bought these tires from a man by the name of Griffith. A warrant of arrest was obtained for Griffith charging him with receiving stolen property. Griffith disappeared, was afterwards located in the state of Kansas, but returned to El Reno. After his return, John Good and a boy about 16 yrs.

old named Dean Halbert were jointly charged with this offense, on information apparently obtained from Griffith, as Griffith was a witness for the state in this trial, and testified that he and Milton Bruns had obtained these casings late at night from Halbert and Good in the southeast part of El Reno, that Halbert and Good had the casings in Good's automobile, that they said they had trouble with the engine, and had telephoned into the city to Bruns to come out and get the casings, and Bruns had got Griffith to go out there with him. Bruns at that time was operating a motion picture machine in one of the theaters in El Reno, and part of these casings were taken back to that theater, and the others of them were taken by Griffith for use on an automobile that he owned, but when the casings would not fit his car he sold them to Jobe, and in that way the casings were traced back to the possession of Halbert and Good.

Good admits that Griffith and Bruns got the casings from his car at the place and time testified to by Griffith, but he says that he was employed by Halbert in his capacity as a taxi driver to make a trip into the country; that he (Good) had no knowledge of what Halbert intended to do; that they left El Reno about 8:30 one evening, and drove out east of town quite a distance, when Halbert told him to stop; that Halbert got out of the car and commenced to load these casings into the car from a patch of weeds which was located at the side of the road; that he never asked Halbert anything about the casings, but at his request hauled him back to El Reno, but that when they got to the southeast part of town the engine stopped, and Halbert went and called Bruns and Griffith out there; that Bruns and Griffith came out there and took the casings; that he never had anything to do with the larceny of the casings, and never received any of the money derived from their sale; that he merely accepted, as a taxi driver, the usual com-

pensation for making a trip of this kind; that, although he knew all about the fact that Griffith and Bruns had received these casings from Halbert, he never told any of the officers anything about it; that his reason for not telling anything about it was that he thought it would hurt his business. There are other minor facts and circumstances which are unnecessary to relate.

It is contended that this evidence is insufficient to sustain conviction. According to the testimony of the state's witnesses two parties stole these casings. The defendant admits that he and Halbert went out there and got them. Defendant would have the jury believe that they had already been taken and hid in a patch of weeds before they went out there, but defendant's story does not appear to be credible. Even under his own statement it must have been apparent to him that Halbert was committing a crime; that, when he loaded these casings into the defendant's car, he was stealing them. All the surrounding circumstances were of such a suspicious character that the defendant must have known that Halbert was in the act of stealing these casings. Knowing that fact, he assisted him in the asportation of them. We believe the jury was justified in returning a verdict of guilty upon the defendant's own testimony. One who joins with a thief and assists in the asportation and disposal of stolen property, knowing at the time he does so that the other acting with him is in the act of carrying away the property of another, is equally guilty of the larceny. Brown v. State, 7 Okla. Cr. 678, 126 Pac. 263; Geo. Reed v. State, 22 Okla. Cr.——, 210 Pac. 311.

It is also contended that the trial court failed to instruct the jury fully on the ingredients of the crime of grand larceny. An examination of the instructions given leads us to conclude that the charge was sufficient, especially as coun-

sel for the defendant requested no further instruction or instructions embracing the constituent elements of the crime.

It is also contended that the trial court erred in refusing to give the defendant's requested instruction on circumstantial evidence. The trial court gave an instruction on circumstantial evidence which was a modification of the instruction requested. A judgment of conviction will not be reversed because of minor errors in the court's instructions, where, upon the defendant's own testimony, a conviction should have resulted.

The judgment is affirmed.

DOYLE, P. J., and BESSEY, J., concur.